# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| JOSHUA NYAUNDI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 5:22-CV-06005-DGK ) |
| TRIUMPH FOODS, LLC, | ) ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION

This case arises out of Plaintiff Joshua Nyaundi's employment with Defendant Triumph Foods, LLC ("Triumph"). Plaintiff alleges Triumph passed him over for a promotion, subjected him to a hostile work environment, and then fired him because of his race and national origin in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, *et seq*. ("MHRA") and federal law, 42 U.S.C. § 1981.

Now before the Court is Triumph's Motion for Summary Judgment. ECF No. 55. Because Plaintiff cannot establish a submissible claim under either the MHRA or § 1981, the motion is GRANTED.

### Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

Plaintiff's quoting *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007) for the proposition that "[s]ummary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence" is unavailing. The Eighth Circuit has routinely rejected this standard. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (clarifying "[t]here is no 'discrimination case exception' to the application of summary judgment" in a case brought under both § 1981 and state antidiscrimination law).

**Undisputed Material Facts**

To resolve the motion, the Court must first determine the material undisputed facts. The Court has limited the facts to those that are undisputed and material to the pending summary judgment motion. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has excluded legal conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Improperly controverted facts have also been excluded from the record. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

Determining the material undisputed facts has been difficult given Plaintiff's briefing, which often fails to properly controvert facts, is self-contradictory, and occasionally misrepresents deposition testimony. For example, Plaintiff states many of Triumph's proposed facts are "controverted" because Triumph describes the key event in this case—a physical confrontation between Plaintiff and a subordinate during which Plaintiff grabbed the subordinate's collar—as an "altercation" or a "physical altercation." Plaintiff denies being involved in a physical altercation, and instead claims he was "attacked without provocation." *See* Pl.'s Opp. at 41, ECF No. 57. But in his Charge of Discrimination to the Missouri Commission on Human Rights ("MCHR"), Plaintiff stated he was "forced into an *altercation*" and admits he grabbed his subordinate by the collar. *See* Charge of Discrimination, Ex. 1-12, ECF No. 56 (emphasis added). Although Plaintiff apparently wants to avoid the word "altercation" because of its connotation, being attacked is still being involved (albeit involuntarily) in a physical altercation. Based on Plaintiff's admission and the record, the Court will use the term "altercation," but will refrain from using the term "physical altercation." The exact terminology used, however, is ultimately immaterial because what matters is Plaintiff admits he touched his subordinate.

Plaintiff's controverting many of Triumph's proposed facts as "immaterial" or "unsupported" by the record has also been frustrating, because after controverting these facts, Plaintiff then includes those same and/or similar facts in his proposed facts. For instance, Plaintiff claims deficiencies in his annual performance evaluations are immaterial, *see* Pl.'s Opp. at 2–4, but then tries to admit positive information from those same evaluations in his proposed facts, *see id.* at 27–29. The Court has resolved this problem by including only those facts which are both undisputed and material to resolving the summary judgment motion.

3

Lastly, Plaintiff grossly misrepresents deposition testimony to the Court on multiple occasions. For instance, Plaintiff's proposed fact #62 states:

> Defendant admits that when it cannot substantiate a complaint of a physical altercation and/or workplace violence, it does not terminate the employment of the alleged perpetrators(s).

Plaintiff's proposed fact #63 provides as illustration:

> When an African-American employee made a complaint of workplace violence and the alleged perpetrator denied it, [Triumph] took no action because the claim of workplace violence could not be "substantiated". There was no video of the event and the alleged perpetrator denied engaging in a physical altercation and/or workplace violence [(i.e., twisting her wrist)].

*Id.* at 35. The testimony cited, however, states that after thoroughly investigating that particular claim, Triumph could not substantiate the allegation because there were *no witnesses*, no video footage, the alleged perpetrator denied the claim, *and Triumph discovered the alleged victim had injuries prior to working at Triumph*. Mr. Boss Dep. at 80:4–12, ECF No. 56-2. Plaintiff egregiously omits parts of Mr. Boss's testimony (i.e., the absence of witnesses and discovering the employee already had injuries) to make his position seem more favorable. Due to this misrepresentation, and countless others, the Court spent significant time combing through the record to determine the material undisputed facts under Rule 56(c) and Local Rule 56.1(a).

These undisputed material facts are as follows:

Triumph operates a pork processing facility in St. Joseph, Missouri. On April 21, 2010, Triumph hired Plaintiff as a production employee. Plaintiff has black skin color, is of Kenyan nation origin, and has legally resided in the United States since 2010.

During his employment at Triumph, Plaintiff generally had positive performance evaluation reports. However, three of Plaintiff's last four performance evaluations noted concerns regarding his communication skills and interactions with others.

Generally, when a job position opens for supervisors, Triumph posts the opening through its ADP system, which would permit employees to see the posting and apply to it.

In 2018, Operations Manager Clay Swan promoted Plaintiff. In doing so, Plaintiff replaced a Hispanic employee who was terminated. At some point, Plaintiff was promoted again, replacing another Hispanic employee who was terminated. As best the Court can tell, these promotions were to the positions of "Trainer" and then "Production Supervisor." Brent Lambright, a white male, was Plaintiff's direct supervisor.

At some later point in time, Plaintiff anticipated a promotion to General Foreman (or General Supervisor).[1] Mr. Swan had conversations with Plaintiff about a promotion to General Foreman around May or June of 2020 and informed Plaintiff that he wanted to make him General Foreman. Pl.'s Opp. at 28. But Plaintiff admits Mr. Swan did not explicitly tell him that he would be promoted to General Foreman, only that it was "implied." *Id.* at 24.

Mr. Swan ultimately took on a new role at Triumph and recommended Julio Sanchez—who is Hispanic and speaks Spanish—to fill his position. Triumph subsequently promoted Mr. Sanchez to Operations Manager.

As best the Court can tell, Jorge Lara was promoted to General Foreman in July 2019 and subsequently repositioned to Plaintiff's department (keeping his title as General Foreman) in September 2020. Plaintiff was not given the opportunity to apply for the position. Mr. Lara is a Hispanic individual that began employment at Triumph in 2006 and worked for many years as a Production Supervisor. Mr. Lara was Plaintiff's supervisor in this new role.

---

[1] The parties use "General Foreman" and "General Supervisor" interchangeably throughout their briefing. As best the Court can tell, this is the same position.

Plaintiff believes Julio Sanchez "blocked" his promotion to General Foreman because Mr. Lara and Mr. Sanchez are both Hispanic. Plaintiff acknowledged he does not know Mr. Lara's qualifications.

On November 7, 2020, Plaintiff had a meeting with Mr. Lambright and Mr. Swan about Mr. Lara's conduct. Plaintiff complained Mr. Lara pulled employees from Plaintiff's line without telling him on three separate occasions—something that Plaintiff had not previously experienced in nearly ten years of employment—and told Plaintiff he could not discipline other employees. According to Plaintiff, he reported discrimination during this meeting, and then was "forced into an altercation"[2] (as discussed below) which he claims was not investigated.

On November 10, 2020, between approximately 8:00 to 8:30 p.m., Plaintiff was involved in an altercation with a subordinate employee, Ashenaf Tewolde, at work. Mr. Tewolde has black skin color and is from Eritrea.

Plaintiff's noticed Mr. Tewolde and another subordinate employee had been involved in an altercation, and afterwards Mr. Tewolde was not working. When Plaintiff approached Mr. Tewolde to ask him why he was not working, Mr. Tewolde grabbed Plaintiff by the neck and tried to hit him. When this occurred Plaintiff and Mr. Tewolde were in a cooler area where a wall obstructed the view of other employees. Plaintiff held Mr. Tewolde by the shirt collar in defense to avoid being hit and attempted to shuffle both individuals into the view of other employees to ask for help. Eventually, other employees saw Plaintiff and Mr. Tewolde and came to intervene. Plaintiff was the only employee of Kenyan national origin on his shift at the time of the alleged incident.

---

[2] In his briefing, however, Plaintiff also admits he was not forced into an altercation. *See* Pl.'s Opp. at 20.

Following the altercation, Mr. Tewolde asked Plaintiff if he could go on break, and Plaintiff granted the request. Shortly thereafter, Mr. Tewolde came out of the cooler area at the Triumph facility and approached Brent Lambright, pointing at his chin and neck area. Mr. Lambright took Mr. Tewolde to Health Services. Plaintiff did not go to Health Services or Human Resources ("HR") after the altercation because he had to take over Mr. Tewolde's job while Mr. Tewolde was on break to keep the line operational.

Todd Kasten was the second-shift HR Manager during this time and was present at the facility when the altercation occurred. Mr. Kasten obtained handwritten statements from Plaintiff, Mr. Tewolde, and two witnesses in the area. Plaintiff believes the altercation lasted only one to two minutes. There was no video footage of the altercation.

After reviewing the written statements, Triumph suspended Plaintiff and Mr. Tewolde that evening for engaging in workplace violence and sent them home. Triumph is unaware of any actual injury suffered by Mr. Tewolde as a result of the altercation. Following the suspension, HR Director David Boss further investigated the matter.

After investigating the altercation—and with due consideration to Triumph's lack of tolerance for workplace violence and its termination of numerous other employees for workplace violence—Mr. Boss decided to terminate both Plaintiff and Mr. Tewolde.

On November 13, 2020, Plaintiff was called to Triumph's facilities late at night. After arriving at the facility, Mr. Kasten told Plaintiff he was terminated and handed Plaintiff a termination letter written by Mr. Boss, which read:

> On November 10, 2020, you were involved in a physical confrontation with one of your employees during work hours. The Company has determined that you escalated the confrontation by physically grabbing your direct report by the collar area with your hands. This action escalated the conflict in an inappropriate way. Your use of physical violence in the workplace is unacceptable and was a violation of the Company's personal conduct rule **PC#6 – Engaging in disorderly conduct,**

7

> **fighting or threatening bodily harm and PC#5 Failure to work professionally and ethically with your coworkers.**
>
> Your position as a supervisor requires that you comply with the Company's Rules of Conduct and exhibit professional and ethical behavior. Due to your violation of these work policies, we have made the decision to release you from employment with Triumph Foods effectively immediately.

Termination Letter, Ex. 1-11, ECF No. 56.

Triumph maintains a policy which strictly prohibits violence in the workplace. The policy provides:

> To provide a safe and secure atmosphere for you, our customers and others with whom we do business, the Company will not tolerate any violent acts or threats/gestures of violence.
>
> **On Company Premises**: Any employee who commits, or threatens to commit, any violent act against any person while on Company premises will be subject to termination. The Company premises include our roadways and parking lots.

Triumph Employee Handbook at 57, Ex. 1-15, ECF No. 56.

Plaintiff claims to have personally witnessed an altercation between Mr. Sanchez and an unidentified person on an unidentified date, wherein the unidentified individual was terminated but Mr. Sanchez was not. Regardless, Plaintiff testified that throughout his employment he "understood that regardless of whether you're a manager or an employee in the production area, that, if you fought in the plant, that could result in your termination[.]" Pl.'s Opp. at 7.

Triumph's Equal Employment Opportunity Policy also prohibits discrimination on the basis of race or national origin, prohibits retaliation, and contains a complaint procedure under which reports can be made directly to HR or to a hotline number.

On February 9, 2021, Plaintiff filed a charge of discrimination with the MCHR alleging his November 13, 2020, termination was discrimination on the basis of race and national origin. He also alleged retaliation. Notably, Plaintiff stated in his deposition that *only* Julio Sanchez retaliated

Case 5:22-cv-06005-DGK   Document 62   Filed 05/25/23   Page 8 of 15

against him.  Pl's Dep. at 131:18–25, 132:1–18, ECF No. 56-1.  Plaintiff also stated Clay Swan and Brent Lambright did not discriminate against him.  *Id.* at 133:13–25, 134:1–8.

On October 5, 2021, the MCHR issued Plaintiff a Right-To-Sue letter.  On December 30, 2021, Plaintiff filed suit against Triumph Foods alleging national origin discrimination (Count I), race discrimination (Count II); retaliation (Count III), and hostile work environment (Count IV)—all in violation of the MHRA—along with discrimination (Count V) and retaliation (Count VI) in violation of 42 U.S.C. § 1981.  Triumph subsequently removed the lawsuit to federal court.

## Discussion

### I. Triumph is entitled to summary judgment on Plaintiff's national origin and race discrimination claims (Counts I, II, and V).

Plaintiff alleges Triumph discriminated against him on the basis of his national origin and race and suffered adverse employment actions as a result, including passing him over for a promotion and terminating him.[3]

Plaintiff may prove his discrimination claims through direct or circumstantial evidence, only the latter of which is alleged here.  *See Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014).  Whether these claims are brought under the MHRA or § 1981, the Court analyzes these claims under the familiar *McDonnell Douglas* burden-shifting framework.  *See* Mo. Rev. Stat. § 213.101.3 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Young*, 754 F.3d at 577–78 (applying *McDonnell Douglas* framework to § 1981 discrimination claim).

---

[3] In his brief, Plaintiff also alleges he was singled out and treated worse than other employees but does not elaborate on this point.  He simply states, "[t]his began to occur after Mr. Sanchez and Mr. Lara replaced Mr. Swan and Mr. Lambright as Plaintiff's supervisors."  Pl.'s Opp. at 40.  It is unclear what Plaintiff is referring to, and the Court will not speculate.  A general allegation such as this raised in an opposition brief is not enough to survive summary judgment.  *See Young Am.'s Found. v. Kaler*, 14 F.4th 879, 888 (8th Cir. 2021) (internal quotation marks omitted) ("[A]t the summary judgment stage the plaintiff must set forth by affidavit or other evidence specific facts to meet its burden.").

The *McDonnell Douglas* framework involves three steps. First, a plaintiff must establish a prima facie case of discrimination. To establish a prima facie case of discrimination, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination[.]" *Young*, 754 F.3d at 577 (quotation omitted). After doing so, the burden shifts to the employer to "articulat[e] a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets this burden, then the plaintiff has the burden to produce evidence that the proffered nondiscriminatory reason is a pretext for discrimination." *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019).

### A. Plaintiff's policy violation constituted a legitimate, nondiscriminatory reason for his termination and was not pretextual.

Triumph argues Plaintiff has not satisfied the prima facie elements of his discrimination claims, and even if he had, Plaintiff's workplace policy violation constituted a legitimate, nondiscriminatory reason for his termination. Plaintiff counters that the alleged policy violation was pretextual.

Even assuming Plaintiff could establish the prima facie elements of race and national origin discrimination, Triumph has provided a legitimate, nondiscriminatory reason for his termination. Mr. Boss terminated Plaintiff because he was involved in an altercation with a coworker which violated workplace policy. And an employee's violation of workplace policy is a legitimate, nondiscriminatory reason supporting termination. *See McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006).

The burden, thus, shifts to Plaintiff to establish pretext. This requires Plaintiff to "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *McNary*, 535 F.3d at

10

Case 5:22-cv-06005-DGK   Document 62   Filed 05/25/23   Page 10 of 15

The *McDonnell Douglas* framework involves three steps. First, a plaintiff must establish a prima facie case of discrimination. To establish a prima facie case of discrimination, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination[.]" *Young*, 754 F.3d at 577 (quotation omitted). After doing so, the burden shifts to the employer to "articulat[e] a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets this burden, then the plaintiff has the burden to produce evidence that the proffered nondiscriminatory reason is a pretext for discrimination." *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019).

### A. Plaintiff's policy violation constituted a legitimate, nondiscriminatory reason for his termination and was not pretextual.

Triumph argues Plaintiff has not satisfied the prima facie elements of his discrimination claims, and even if he had, Plaintiff's workplace policy violation constituted a legitimate, nondiscriminatory reason for his termination. Plaintiff counters that the alleged policy violation was pretextual.

Even assuming Plaintiff could establish the prima facie elements of race and national origin discrimination, Triumph has provided a legitimate, nondiscriminatory reason for his termination. Mr. Boss terminated Plaintiff because he was involved in an altercation with a coworker which violated workplace policy. And an employee's violation of workplace policy is a legitimate, nondiscriminatory reason supporting termination. *See McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006).

The burden, thus, shifts to Plaintiff to establish pretext. This requires Plaintiff to "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *McNary*, 535 F.3d at

769 (quotation omitted); *see also Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) ("To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'"). Plaintiff can prove pretext by demonstrating that the employer's explanation "has no basis in fact," that the employer "shifted its explanation," or that "the employer deviated from [its] policies." *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1017 (8th Cir. 2017). Pretext may also be shown by evidence that the employer treated "similarly situated employees who are not members of the protected class in a different manner." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015). For such a claim, however, Plaintiff must show the employees were "similarly situated in all relevant respects." *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012).

"[T]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016) (quotation omitted) (affirming summary judgment for employer on discrimination claims where employer concluded in good faith based on witness statements that employee had elbowed a coworker); *see also McKay v. U.S. Dept. of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (internal quotation marks omitted) (holding a court is confined to deciding whether an "employer gave an honest explanation of its behavior, not whether its action was wise, fair, or correct"). The Court does not sit as "a super-personnel department with the power to second-guess employers' business decisions." *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013) (internal quotation marks omitted).

Here, Plaintiff has not presented evidence of pretext. Triumph investigated the incident and determined Plaintiff "escalated the confrontation by physically grabbing [his] direct report by

11

the collar area with [his] hands." Plaintiff does not dispute that he grabbed Mr. Tewolde by the collar which is a violation of Triumph's workplace violence policy. Triumph then rightly had a good-faith belief that Plaintiff violated this workplace policy, so its decision to terminate Plaintiff is a legitimate, nondiscriminatory reason supporting termination.

Further, there is no evidence that Plaintiff was treated differently than Mr. Tewolde (who is of a different national origin). Both individuals were immediately suspended and later terminated. *See Shirrell*, 793 F.3d at 887. As for Plaintiff's allegation that other employees have not been terminated for workplace violence, Plaintiff has not demonstrated those individuals were "similarly situated in all relevant respects." *Chappell*, 675 F.3d at 1119. Thus, Plaintiff has not demonstrated pretext.

**B.     Triumph's decision not to promote Plaintiff was not discriminatory.**

Plaintiff also argues he was discriminated against on the basis of race and national origin when Mr. Lara was promoted to General Foreman instead of him because Mr. Lara and Mr. Sanchez are both Hispanic and speak Spanish. Triumph argues Plaintiff failed to establish a prima facie case of discrimination and, regardless, this claim is time-barred.[4]

Plaintiff's allegations are unavailing. Plaintiff was never guaranteed the promotion and was unaware of Mr. Lara's qualifications. Mr. Lara began working at Triumph in 2006, held the position of Production Supervisor longer than Plaintiff, and was laterally promoted to the position of General Foreman. And although Plaintiff was generally a good worker, supervisors did express concerns about his interactions with others. It is well established that a courts role is not to determine if an employer's reason not to promote "is based on sound principles of business

---

[4] Plaintiff does not respond to the argument that this claim is time-barred given Mr. Lara was promoted in 2019. Nonetheless, because the Court concludes Plaintiff has failed to demonstrate a prima facie case of discrimination, the Court declines to address this issue.

12

judgment. Nor is it [a court's] place to tell a business that it must promote an individual who may very well be inappropriate for a position when it can laterally move someone deemed better suited to fill that position. Rather, the relevant inquiry is whether [an employer's] decision was based on race [or national origin]." *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1312 (8th Cir. 1995) (internal citations omitted). Plaintiff has not demonstrated that Triumph's decision was based on race or national origin, but merely speculates to such. *See Mann*, 497 F.3d at 825. Thus, Triumph is entitled to summary judgment on Plaintiff's discrimination claims.

### II. Triumph is entitled to summary judgment on Plaintiff's hostile work environment claim (Count IV).

Triumph argues it is entitled to summary judgment on Plaintiff's hostile work environment claim because Plaintiff never alleged hostile work environment with the MCHR. Plaintiff does not address this allegation in his response. This alone is enough to constitute waiver of the argument. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) (finding "failure to oppose a basis for summary judgment constitutes waiver of that argument" in the Eighth Circuit). Additionally, Plaintiff cannot bring a claim under the MHRA for hostile work environment since he failed to exhaust his administrative remedy on the issue. *See Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464, 468–69 (8th Cir. 2022) (granting summary judgment after plaintiff failed to exhaust administrative remedies). Thus, Triumph is entitled to summary judgment on Plaintiff's hostile work environment claim.

### III. Triumph is entitled to summary judgment on Plaintiff's retaliation claims (Counts III and VI).

Plaintiff argues he was retaliated against because he complained of discrimination (i.e., engaged in protected activity) and was terminated three days later. Triumph argues it is entitled to summary judgment on Plaintiff's retaliation claims because Plaintiff did not engage in protected

13

activity at the November 7, 2020, meeting (and instead only complained that Mr. Lara was moving employees around without his permission), nor was there a causal connection between any alleged protected activity and the altercation which led to his termination.

The *McDonnell Douglas* framework applies to retaliation claims. *See Young*, 754 F.3d at 579 (§ 1981); *Eivins v. Missouri Dep't of Corr.*, 636 S.W.3d 155, 180 (Mo. Ct. App. 2021) (MHRA). To establish a prima facie case of retaliation, Plaintiff must prove "(1) he complained of discrimination; (2) [Triumph] took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1036 (8th Cir. 2016) (citing *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. Ct. App. 2011)) (retaliation under the MHRA); *accord Young*, 754 F.3d at 579 (retaliation under § 1981).

As for the third element, "[s]ome examples for circumstantial evidence of causation include [a] good work record prior to the adverse employment action, close temporal proximity between the complaint and the adverse action, atypical treatment, and facts showing the employer's explanation for the action is unworthy of credence." *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 752 (Mo. Ct. App. 2020). But "a plaintiff generally must present *more than a temporal connection* between protected activity and an adverse employment action." *Denn*, 816 F.3d at 1036 (internal quotation marks omitted).

Plaintiff cannot establish a prima facie case of retaliation. Even assuming Plaintiff engaged in statutorily protected activity at the November 7, 2020, meeting, Plaintiff cannot establish a causal connection between the protected activity and his termination. At best, there is only a temporal connection between his complaint and termination, which alone is not enough to survive summary judgment. *See id*. Plaintiff has not demonstrated a causal connection between the two

events. As stated above, Plaintiff was terminated for violating workplace policy—a separate event that occurred three days later. And even more telling, Plaintiff testified that *only* Julio Sanchez retaliated against him, yet Mr. Boss made the decision to terminate Plaintiff. Thus, no causal connection exists, and Triumph is entitled to summary judgment on Plaintiff's retaliation claims.

## Conclusion

For the reasons discussed above, Defendant's motion for summary judgment is GRANTED. Summary judgment is entered in Defendant's favor on all of Plaintiff's claims.

**IT IS SO ORDERED.**

Date:  May 25, 2023  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT